## In re CHASIN.
### No. 50319.

United States District Court
E. D. New York.

Sept. 25, 1953.

Morris K. Siegel, New York City, for bankrupt.

David Friedman, New York City, for objecting creditor.

GALSTON, District Judge.

This is a petition to review, for the second time, the order of the Referee in Bankruptcy, denying the bankrupt's discharge.

Specification No. 1 of the objection to discharge of the objecting creditor alleged that the bankrupt had made a material false statement in failing to list in his schedule of assets a certain described parcel of land in Sullivan County, New York, of which the bankrupt was the owner. Following a hearing, the Referee found that at the time. of the filing of the petition in bankruptcy, the bankrupt was the owner and record title holder of the land in question, and that he did not disclose in his schedules or otherwise that he owned and had title to it. The Referee concluded that the bankrupt had knowingly and fraudulently concealed from the trustee property belonging to the bankrupt estate, and had made a false oath in his schedules in relation thereto. 11 U.S.C.A. § 32, sub. c(1).

The bankrupt filed a petition for review of the Referee's order, dated March 23, 1953, denying his discharge. Judge Abruzzo, by order entered on April 29, 1953, referred the matter back to the Referee for a further hearing on specification No. 1.

After a hearing, on May 26, 1953, in accordance with the order of the court, the Referee again sustained the objection, stating:

"* * * the telltale written proof of the bankrupt's co-maker's statement dated January 23, 1948, given to Modern Industrial Bank * * * in which the bankrupt refers to his ownership of the Youngs-

ville realty, and the original deed produced by the bankrupt at the May 26, 1953 hearing * * * confirm my original findings. While the bankrupt may have been an innocent pawn in his father's hands in January 1939 when the deed was originally given to him, it is evident that after the bankrupt reached his majority, and particularly in 1948 and 1951, he manifested such indicia of ownership of the realty as (to) compel the conclusion that he knowingly and fraudulently made a false oath in omitting any reference to the realty in his schedules verified * * * and filed * * * on August 29, 1952."

The Referee's order denying discharge was entered August 12, 1953.

In again petitioning for review, the bankrupt alleges two grounds:

(1) That the evidence did not justify the finding that the bankrupt knowingly and fraudulently made a false oath.

(2) That specification No. 1 was defective in that it failed to allege that the false oath was made "knowingly and fraudulently".

The objection as to the sufficiency of specification No. 1 was for the first time before the Referee at the hearing on May 26, 1953. He held that the failure to raise the question at the original hearing, held January 22, 1953, constituted a waiver of any formal defect in the specification.

In his petition for review of the first order of the Referee denying discharge, the bankrupt listed, among the errors of the Referee, the following particulars:

"3a. The mere fact that an omission was made in the schedules filed herein of a piece of realty assessed at the value of $100.00 is not sufficient to sustain a finding that it was made fraudulently.

"3b. There is no evidence submitted to sustain a finding that the omission from the schedules by petitioner of the aforesaid piece of realty was made 'knowingly and fraudulently'."

It appears, therefore, that the specification as it read put the bankrupt on fair notice of the case which the objecting creditor intended to prove. Consequently, it was quite proper for the Referee to hold that the failure to object to the adequacy of the specification on the first hearing constituted a waiver. Matter of Ulrich, D.C., 18 F.Supp. 919, affirmed without opinion, 2 Cir., 95 F.2d 1018.

On the merits of the objection contained in specification No. 1, the record discloses a conflict in the testimony in respect to the bankrupt's ownership, dominion and control of the realty in question. Witnesses testified to conversations with the bankrupt in which he expressed ownership, including offers by the bankrupt to sell the property and the desire to build bungalows thereon. The bankrupt denied having such conversations. He admitted that the property had been conveyed to him by his father in 1939. He explained the reason for his failure to include the property in the schedule of his assets as follows:

"Well, I hadn't paid any taxes on the property for all these years, so I had been under the impression that the property wasn't mine."

The Referee resolved the conflict against the bankrupt. As his opinion indicates, the documents disclosing the fact of the bankrupt's ownership were an important factor in his decision. There is no reason to doubt that the bankrupt knew the property had been conveyed to him. He produced the original deed at the May 26, 1953 hearing. Moreover, his statement in 1948, as comaker of a note, contradicts his testimony that he did not regard himself as the owner. There is, therefore, evidence to support the Referee's finding that the omission was made knowingly and fraudulently.

In view of the foregoing the Referee's order is affirmed.